IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TITLE INDUSTRY ASSURANCE )
COMPANY, R.R.G., )
 )
      Plaintiff, )
 )
v. ) No. 14 C 1906
 )
CHICAGO ABSTRACT TITLE )
AGENCY, et al, )
 )
      Defendants. )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Title Industry Assurance, Company, R.R.G.'s (TIAC) motion for summary judgment, on Defendant First American Title Insurance Company's (First American) motion for summary judgment, and on Defendant and Counter-Plaintiff Coastal Funding LLC's (Coastal) motion for summary judgment on its counterclaim. For the reasons stated below, TIAC's motion is denied, First American's motion is granted, and Coastal's motion is granted.

# BACKGROUND

Defendant Chicago Abstract Title Agency (Chicago Abstract), which is now

1

administratively dissolved, allegedly provided owners and lenders with real estate closing, loan closing, title and escrow services. Defendant Michael J. Kons (Kons) and Defendant Steve T. Knupp (Knupp) were allegedly employees, officers, or owners of Chicago Abstract. In addition, Juan C. Orozco (Orozco) allegedly worked for Chicago Abstract. Beginning in May 2008, Orozco allegedly started to engage in fraudulent activities while working for Chicago Abstract. Subsequently, in July 2008, TIAC issued an insurance policy (Policy) to Chicago Abstract. Several entities eventually brought civil actions against Chicago Abstract accusing Chicago Abstract of the misuse of funds and misappropriation of funds. In November 2008, First American allegedly commenced a lawsuit (First American Action) against Chicago Abstract, Kons, and Knupp (collectively referred to as "Chicago Abstract Defendants"). In November 2008, Defendant First Funding Source, LLC (First Funding) also filed an action (First Funding Action) against Chicago Abstract. In December 2008, Coastal also brought an action (Coastal Action) against Chicago Abstract and others. In July 2009, the court-appointed receiver for Chicago Abstract provided notice to TIAC of two potential claims for which First American was identified as the potential claimant (First American Potential Claims). In January 2013, in a separate criminal action, Orozco allegedly pled guilty to wire fraud in connection with his work for Chicago Abstract.

TIAC includes in its complaint claims seeking a declaration that there is no coverage for the First American Action based on exclusions (a) and (j) (Exclusions) of the Policy (Count I), claims seeking a declaration that there is no coverage for the

2

First American Potential Claims based on the Exclusions (Count II), claims seeking a declaration that there is no coverage for the Coastal Action based on the Exclusions (Count III), claims seeking a declaration that there is no coverage for the First American Action because the Policy does not provide coverage for the relief sought by First American or First Funding (Count IV), claims seeking a declaration that there is no coverage for the First American Potential Claims because the Policy does not provide coverage for the relief sought (Count V), and claims seeking a declaration that there is no coverage for the Coastal Action because the Policy does not provide coverage for the relief sought (Count VI). TIAC further seeks a declaration that it has no obligation to defend or indemnify Chicago Abstract in connection with the First American Action or Coastal Action. The court notes that based upon the parties filings, it appears that TIAC ultimately elected to provide a defense for Chicago Abstract in the Coastal Action, appointing a counsel to defend Chicago Abstract and later asserting a reservation of rights.

 First American and Coastal answered the complaint in the instant action. Coastal also filed a counterclaim, seeking a declaration that TIAC had a duty to defend Chicago Abstract in connection with the Coastal Action, that TIAC breached its duty to defend Chicago Abstract in the Coastal Action, and that TIAC is estopped from asserting any and all policy defenses to coverage for Coastal's claims, injury and damage. TIAC now moves for summary judgment on all of its claims and on Coastal Funding's counterclaim. First American and Coastal (collectively referred to as "Moving Defendants") also move for summary judgment. First American moves

3

for summary judgment on the claims brought against it.  Coastal moves for summary judgment on its counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).  When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**DISCUSSION**

TIAC argues that neither First American nor Coastal are named insureds, judgment creditors or assignees, and thus cannot recover from TIAC. First American argues that TIAC improperly raises defenses that were not pled in the complaint, that the First American Action falls within the coverage of the Policy, that TIAC is now estopped from asserting any exclusions or defenses under the Policy, and that the instant action is untimely. Coastal argues that the First American Action and Coastal Action (collectively referred to as "Underlying Actions") fall within the coverage of the Policy and that TIAC is now estopped from raising policy defenses to coverage.

I.  New Legal Theories Not Included in Complaint

First American argues that TIAC improperly raises new legal theories relating to coverage that were not raised by TIAC in its complaint. A plaintiff may not amend its complaint by introducing new legal theories during summary judgment briefing that were not included in the complaint. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012); *see also CMFG Life Ins. Co. v. RBS Securities, Inc.*, 2015 WL 4978996  (7th Cir. 2015)(quoting *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 807-09 (7th Cir. 2014) for the proposition that an "argument raised on summary judgment was not improper attempt to amend the pleadings because plaintiff was merely offer[ing] an alternative legal characterization of a fact")(internal quotations omitted).  To allow a change in strategies at the summary judgment stage would unfairly deprive an opponent of an opportunity to conduct necessary discovery and

adequate time to prepare an opposing position. While TIAC could have pled its claim in more general terms and withstood a motion to dismiss, TIAC chose to specifically delineate the precise basis for each of its claims. After presenting a recitation of the pertinent facts in this case, TIAC explains the legal theories underlying each claim. In Counts I, II, and III, TIAC alleges that there is no coverage "based on exclusions (a) and (j) of the Policy." (Compl. 10, 12, 13). In each of those counts, TIAC specifically references such exclusions and argues that based on such exclusions there is no coverage under the Policy. (Compl. 10-13). In Counts IV, V, and VI, TIAC alleges that the Policy "does not provide relief for the relief sought. . . ." (Compl. 14-16). In each of those counts, TIAC argues that there is no coverage under the Policy because the relief sought or potentially sought "does not constitute 'damages' or 'claims expense' covered by the Insuring Agreement of the Policy." (Compl. 14-16).

A.  Relationship with Chicago Abstract

TIAC in support of its motion for summary judgment and in opposition to Moving Defendants' motions for summary judgment presents a new theory, arguing that the coverage issue can be resolved at the outset since neither First American nor Coastal are insureds, judgment creditors, or assignees of Chicago Abstract. (TSJ Mem.2-3); (Resp. FSJ 2); (Resp. CSJ 2-3). Such a claim is not referenced in the complaint and TIAC has not sought leave to file an amended complaint to include such claims. Moving Defendants have shown that they would be prejudiced if TIAC

were allowed to pursue such claim at this juncture. Therefore, TIAC's argument is improper at this juncture.

B. Prior Knowledge Provision

TIAC in support of its motion for summary judgment and in opposition to Moving Defendants' motions for summary judgment presents a new defense, pointing to the Policy Insuring Agreement that provides that TIAC "agrees to pay on behalf of the Insured. . . . as a result of claims first made against the Insured. . . by reason of a wrongful act which happened . . . prior to the policy period provided that on the effective date of this policy the Insured has no knowledge of such wrongful act." (TSJ Mem. 4); (Resp. FSJ 3-4); (Resp. CSJ 5-6). TIAC argues that based upon Orozco's knowledge of his wrongdoing, that provision precludes coverage. Such a claim is not referenced in the complaint and TIAC has not sought leave to file amended complaint to include such claim. Moving Defendants have shown that they would be prejudiced if TIAC were allowed to pursue such claim at this juncture. Therefore, TIAC is barred from presenting such claim.

C. Misrepresentation Provision

TIAC in support of its motion for summary judgment and in opposition to Moving Defendants' motions for summary judgment presents a new defense, pointing to the Policy application, which asked: "During the past year, has any claim been made or are there any circumstances which may result in a claim that have NOT

7

BEEN REPORTED to TIAC?" (TSJ Mem. 7); (Resp. FSJ 9); (Resp. CSJ 13). TIAC argues that Chicago Abstract answered "No" to the question despite the fact that Orozco knew that response to be inaccurate. Such a claim is not referenced in the complaint and TIAC has not sought leave to file an amended complaint to include such a claim. Moving Defendants have shown that they would be prejudiced if TIAC were allowed to pursue such claim at this juncture. Therefore, TIAC is barred from presenting such claim. TIAC's attempt to shift its strategies in this case at this late juncture and bring new legal theories into this case would be prejudicial to the other parties in the litigation.

## II. Policy Coverage

TIAC argues that there is no coverage under the Policy. Under Illinois law, to ascertain "whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy . . . and [i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010)(quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)). An insurance policy is "interpreted to effectuate the intent of the parties as expressed through the contract language" and "[a]mbiguities are construed against the insurer, as drafter." *Id.* at 345-36. An insurer has the burden of showing that "an exclusion applies," and

8

"[i]nsureds, in turn, have the burden to prove that an exception to an exclusion restores coverage" *Id.* at 347.

### A. Waiver of Exclusions Provision

Moving Defendants argue that the Exclusions do not apply based on the waiver of exclusions provision, which provides the following: "WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS: Whenever the coverage provided under this policy would not apply because of Subparagraph (a) of THE EXCLUSIONS or because of the noncompliance with DUTIES IN THE EVENT OF A CLAIM, the insurance which would otherwise be provided under this policy will apply to each Insured who did not personally commit or personally participate in committing any of the wrongful acts described in such exclusion or condition and who had neither notice nor knowledge of such wrongful acts. . . ." (Compl. Ex. E). First American Argues that, in addition to Orozco, Chicago Abstract, Kons, and Knupp are also Insureds that are entitled to protection under the Policy. Orozco was an Insured and was aware of the wrongful actions prior to the inception of the policy. Neither the terms of the Policy nor the Illinois innocent insured doctrine offer protection to Moving Defendants in this case. *See Illinois State Bar Ass'n Mut. Ins. Co. v. Law Office of Tuzzolino and Terpinas*, 27 N.E.3d 67, 72 (Ill. 2015)(stating that "[t]he common law innocent insured doctrine operates in cases where there are two or more insureds on a policy, and it allows an insured who is innocent of wrongdoing to recover despite the wrongdoing of other insureds"). Also, in regard to Chicago

9

Abstract, such an argument would make little sense since it is a corporate entity. Chicago Abstract can only act and have knowledge via its representatives such as Orozco and it could never "personally participate" in a wrongful act. As to Kons and Knupp, even if the waiver did apply to them, Exclusion (j) would still be applicable and preclude coverage. TIAC also points out that the record shows that key representatives of Chicago Abstract were aware of Orozco's conduct and failed to provide notice as required in the waiver provision. (TSF Ex. C-1: 124). Thus, the waiver provision is not applicable.

### B. Exclusion (a)

TIAC contends that Exclusion (a) applies in this case. Exclusion (a) provides the following: "THIS POLICY DOES NOT APPLY TO ANY CLAIM OR CLAIMS EXPENSE BASED UPON, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR RELATING IN ANY WAY TO. . . any dishonest, fraudulent, criminal malicious or intentional wrongful acts committed by or at the direction of the Insured. . . ." (Compl. Ex. E). In the definitions section of the policy, the term "Insured" is defined as "the Named Insured" or "any partner, officer, director, stockholder, member or employee of the Named Insured solely while acting within the scope of his duties for the Named Insured. . . ." (Compl. Ex. E).

It is undisputed that Chicago Abstract is the Named Insured on the Policy. (F R TSF Par. 38); (C R TSF Par. 38). It is also undisputed that Orozco was an employee of Chicago Abstract. (F R TSF Par. 13); (C R TSF Par. 13). It is further

undisputed that Orozco pled guilty to wire fraud in connection with activities he engaged in while employed by Chicago Abstract. (F R TSF Par. 14); (C R TSF Par. 14). It is also undisputed that Orozco was responsible for Chicago Abstract's escrow account and perpetrated fraud as part of his job duties. (F R TSF Par. 15-18); (C R TSF Par. 15-18). The undisputed facts show that Orozco, as an employee of Chicago Abstract, falls within the definition of the Insured. Moving Defendants argue that Orozco's knowledge cannot be imputed to Chicago Abstract. However, as TIAC correctly points out, it is not necessary to resolve that issue since the Policy specifically defines the Insured to include employees of the Named Insured. The undisputed facts also show that Orozco engaged in dishonest, fraudulent, criminal malicious, or intentional wrongful acts in the scope of his employment with Chicago Abstract. Thus, at the outset it would appear that the undisputed facts indicate that Exclusion (a) precludes any coverage under the Policy. However, as Moving Defendants correctly point out, the complaints in the Underlying Actions assert other proximate causes for harm other than Orozco's misconduct that cannot be directly or indirectly attributed to Orozco. (FSJ Mem. 4-5); (CSJ Mem. 8-13). For example, the complaints in the Underlying Actions allege the negligent supervision of the Chicago Abstract escrow accounts. Moving Defendants have also pointed to claims raised in the Underlying Actions that relate to independent duties that are entirely separate from those owed by Orozco. (FSJ Mem. 4-5); (CSJ Mem. 8-13). For example, the complaints in the Underlying Actions raise claims that implicate independent fiduciary duties owed on the part of Chicago Abstract Defendants. Thus, when

considering the broad lens of review under Illinois law, since the claims in the Underlying Actions potentially fall within the Policy's coverage, TIAC had a duty to act.

### C. Exclusion (j)

TIAC contends that Exclusion (j) applies in this case. Exclusion (j) provides the following: "THIS POLICY DOES NOT APPLY TO ANY CLAIM OR CLAIMS EXPENSE BASED UPON, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR RELATING IN ANY WAY TO. . . any defalcation, commingling or, or failure to pay any funds, notes, drafts, or other negotiable instruments. . . ." (Compl. Ex. E). As explained above, it is undisputed that Orozco engaged in a fraudulent scheme while working for Chicago Abstract. It is further undisputed that Orozco's fraud involved the improper commingling of funds. (F R TSF Par. 16-19); (C R TSF Par. 16-19). Thus, again on the surface the undisputed facts appear to indicate that Exclusion (j) precludes any coverage under the Policy. However, again as explained above in regard to Exclusion (a), due to the alternative proximate causes for harm and independent duties, the claims in the Underlying Actions potentially fall within the coverage of the Policy.

### D. Damages Provision

In Counts IV through VI, TIAC argues that the relief sought by First American in the First American Action does not fall within the type of relief covered

in the Policy. The Policy provides that TIAC will be "legally obligated to pay as damages and claims expenses as a result of claims first made against the Insured during the policy period by reason of a wrongful act . . . ." (Compl. Ex. E). TIAC argues that the injunctive relief sought by First American in the First American Action does not constitute damages. However, the Illinois Supreme Court has made clear that similar language such as a provision covering a "suit seeking damages," should be "construed to include suits seeking either or both compensatory damages and equitable relief." *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 217 (Ill. 2004). TIAC has not pointed to any specific language in the Policy that bars coverage for actions involving equitable relief and, as the drafter of the Policy, inferences as to the construction of the Policy terms are to be made in favor of the insureds. *Santa's Best Craft, LLC*, 611 F.3d at 346. Thus, TIAC's argument as to the limitation on the word "damages" in the Policy is without merit.

III. Doctrine of Estoppel

Moving Defendants also argue that TIAC is estopped from asserting an exclusions or defenses under the Policy. Under Illinois state law, an insurer that disputes coverage of a policy can: (1) "seek a declaratory judgment regarding its obligations before trial of the underlying action," (2) "defend the insured under a reservation of rights," or (3) "refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage."

13

*Santa's Best Craft, LLC*, 611 F.3d at 349; *see also Panfil v. Nautilus Ins. Co.*, 2015 WL 4940358, at *1-2 (7th Cir. 2015)(stating that "[a]n insurer taking the position that a complaint potentially alleging coverage is not covered by a policy which provides that the insurer has the right and duty to defend any claims brought against the insured cannot simply refuse to defend the insured," that "[i]t must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage" and that "[i]f the insurer fails to do this, it is estopped from later raising policy defenses to coverage . . . because the duty to defend is broader than the duty to pay")(internal quotes omitted)(quoting *Murphy v. Urso*, 430 N.E.2d 1079, 1082 (Ill. 1981)).

Moving Defendants assert that upon TIAC's receipt of the notice of the pleadings and notice of a defense, TIAC's duty to defend was triggered, and TIAC was required to defend against all claims asserted in the Underlying Actions. Moving Defendants contend that if TIAC disputed coverage, it was required to either defend under a reservation of rights or seek equitable relief by way of a declaratory judgment in a timely fashion. Instead, Moving Defendants contend that TIAC simply denied coverage, that the instant action is untimely, and that TIAC is now estopped from asserting exclusions or defenses under the Policy.

TIAC points out that the doctrine of estoppel applies "where an insurer has breached its duty to defend," and that the court must inquire "whether the insurer had a duty to defend and whether it breached that duty." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999)(stating that

"[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered" and that "[t]hese circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage"); *see also Fuller's Car Wash, Inc. v. Liberty Mut. Ins. Co.*, 698 N.E.2d 237, 243 (Ill. App. Ct. 1998)("finding that "[b]ecause the language of [the relevant policy] clearly exclude[d] coverage for the business at issue in the case . . ., the facts alleged in the underlying complaint d[id] not present a case of potential coverage" and "the plaintiffs' estoppel argument fail[ed]").

TIAC argues that the estoppel doctrine along with its consideration of timeliness is not applicable, because there was not wrongful denial of coverage. However as indicated above, the exception that would negate a timely action on the part of the insurer is more than simply a showing that in the end the denial of coverage was not wrongful. It must be established that at the time when the insurer could have acted, there clearly was not coverage. *Employers Ins. of Wausau*, 708 N.E.2d at 1135. As indicated above, even when considering the Exclusions, the claims in the Underlying Actions potentially fall within the coverage of the Policy. Also, even if TIAC had shown that the Exclusions apply and preclude coverage, the record is not such that there was clearly no conceivable basis for coverage that would have relieved TIAC of taking some sort of timely action. As explained above, Moving Defendants presented various legitimate arguments as to potential coverage

under the Policy. TIAC could have elected to promptly seek declaratory relief and argued that the Exclusions barred coverage, but instead TIAC took no action for over five years. Such a delay is well beyond the boundaries of what would be a reasonable delay in seeking a declaration as to TIAC's obligations. *L.A. Connection v. Penn-America Ins. Co.*, 843 N.E.2d 427, 432-33 (Ill. App. Ct. 2006). TIAC fails in response to Moving Defendants' arguments to even address the timeliness issue or offer any explanation as to why it has waited over five years to bring the instant action. If, as TIAC itself now argues in its briefs, it is self evident from a simple review of the Exclusions and the complaints in the Underlying Actions that there is no coverage, there is no justifiable reason why TIAC should not have raised such arguments in a timely fashion. The fact that TIAC also ultimately determined that it should defend Chicago Abstract in the Coastal Action is another indication that TIAC understood that it was obligated to act in a timely fashion. If, as TIAC now argues that it could simply wait indefinitely to bring a declaratory action to clarify its obligations because it could show that there was not wrongful denial of coverage, then there would have been no need to enter into the Coastal Action to defend Chicago Abstract.

Judicial economy and the efficient administration of the judicial system is not promoted if TIAC is allowed to successfully proceed with declaratory claims at this juncture. Thus, TIAC is estopped at this late juncture from asserting that the Exclusions prohibit coverage under the Policy. Also, although TIAC ultimately decided to provide a defense to Chicago Abstract in the Coastal Action with a

16

reservation of rights, the record does not show that such an action was timely either in light of the fact that TIAC failed to act until a default had been entered and failed to seek a reservation of rights until two months after TIAC appointed counsel to defend Chicago Abstract in the Coastal Action. (R CSF Par. 68-72). Even though Chicago Abstract may have been a dissolved corporation, nothing prevents TIAC from sending the reservation of rights to Knupp or Kons. Based on the above, TIAC's motion for summary judgment is denied and Moving Defendants' motions for summary judgment are granted.

## CONCLUSION

Based on the foregoing analysis, TIAC's motion for summary judgment is denied and Moving Defendants' motions for summary judgment are granted. Based upon the record presented in this case: (1) TIAC has an obligation to defend and indemnify Chicago Abstract in connection with the First American Action and the Coastal Action, (2) and TIAC has an obligation to First American and Coastal in connection with the First American Action and Coastal Action. In light of the declaratory relief accorded to Moving Defendants, to the extent that procedurally any claims against Coastal or the Abstract Defendants technically remain alive, such claims are dismissed.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 24, 2015